IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISON

| | | |
|---|---|---|
| MALINDA SIMON, | ) | CASE NO. 5:21-CV-00929-CEH |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | CARMEN E. HENDERSON |
| | ) | |
| SEVERNS VALLEY BAPTIST CHURCH, | ) | |
| INC., PAUL J. SIMON, MICHAEL POOLE, | ) | **MEMORANDUM OPINION AND** |
| DR. RAYMOND HICKS, | ) | **ORDER** |
| | ) | |
| Defendants, | | |

## I. Introduction

This is before the Court on Defendant Severns Valley Baptist Church, Inc's ("Defendant Severns"), Defendant Paul Simon's ("Defendant Simon"), Defendant Michael Poole ("Defendant Poole's"), and Defendant Dr. Raymond Hicks' ("Defendant Hicks") motions to dismiss for lack of personal jurisdiction. (ECF Nos. 5, 6, 23 25). For the following reasons, the Court GRANTS the Defendants' motions and DISMISSES the case in its entirety.

## II. Background

### A. Factual History

Defendant Severns is a megachurch located in Kentucky. (ECF No. 7 at 5). Defendant Severns participates in a program called "Celebrate Recovery" wherein participants struggling with "dysfunction and compulsive behaviors" are encouraged to testify before the church. (ECF No. 7 at 5). This testimony is livestreamed and available on Defendant Severn's website. (ECF

1

No. 7 at 5–6). Defendant Simon is an active leader within Defendant Severns and a Celebrate Recovery leader and participant. (ECF No. 7 at 5). Defendant Ray is Defendant Simon's brother-in-law and sits on the Financial Board at Severns Valley. (ECF No. 7 at 13). Defendant Poole is Severns Valley's Creative Arts Director. (ECF No. 7 at 13). Plaintiff Malinda Simon-Dazey was previously married to Defendant Simon and currently lives in Ohio. (ECF No. 7 at 5).

Plaintiff alleges that on October 7, 2020 and November 27, 2020, Defendants live-streamed "a drawn-out diatribe wherein Defendant Simon alleged criminal wrongdoing, mental illness, infidelity, and alleged [that] Plaintiff had an illegitimate child." (ECF No. 7 at 7). This "diatribe" was part of Defendant Simon's Celebrate Recovery testimony. The testimony was given in front of over 500 people and live streamed via Instagram Live. (ECF No. 7 at 12). This testimony was publicly available for an extended period of time via Defendant Severn's website, Celebrate Recovery's website, and YouTube. (ECF No. 7 at 9). Plaintiff claims that the testimony contained multiple false, defamatory statements about her. (ECF No. 7 at 6–16). Plaintiff also states that Defendants knew she lived in Ohio and the defamatory statements would harm her there. (ECF No. 7 at 14). Plaintiff asserts that she did suffer such harm in Ohio. (ECF No. 7 at 16).

**B. Procedural History**

As a result of the alleged conduct, Plaintiff brought this suit on May 4, 2021. (ECF No 1). She alleged two counts of defamation per se and one count of intentional infliction of emotional distress. (ECF No. 1). On July 2, 2021, Defendant Severns moved to dismiss this action based on a lack of personal jurisdiction and improper venue. (ECF No. 5). On July 5, 2021, Defendant Simon similarly filed a motion to dismiss for the same reasons. (ECF No. 6). On July 23, 2021, Plaintiff moved the Court to amend her Complaint, adding two new Defendants—Dr. Raymond Hicks and Michael Poole. (ECF No. 7). The parties consented to the undersigned's jurisdiction on

2

April 19, 2022. (ECF No. 18). Being that Plaintiff could amend her complaint as a right under Fed. R. Civ. P. 15(a)(1)(B), the Court denied her motion as moot. Because the Amended Complaint deemed the original Complaint inoperative, the Court also denied Defendants Severns' and Defendant Simon's motions to dismiss as moot. (ECF No. 21). However, as the Amended Complaint did not affect their motions to dismiss, the Court renewed the motions and construed them as motions to dismiss the Amended Complaint. (ECF No. 21).

On May 3, 2022, Plaintiff filed her opposition to Defendant Severns' and Defendant Simon's motions. (ECF No. 22). On May 9, Defendant Poole and Defendant Hicks filed their first motion to dismiss, bringing the same arguments as the original Defendants' motions. (ECF No. 23). That same day Defendant Severns, Defendant Poole, Defendant Hicks, and Defendant Simon filed replies supporting their original motions to dismiss. (ECF No. 24, 25). On May 21, 2022, Plaintiff filed two more briefs in opposition. (ECF No. 28, 29). As mentioned above, each motion to dismiss challenges personal jurisdiction and venue.

### IV. Discussion

#### A. Personal Jurisdiction

"When a federal court sits in diversity, it may exercise personal jurisdiction over an out-of-state defendant only if a court of the forum state could do so." *Newberry v. Silverman*, 789 F.3d 636, 641 (6th Cir. 2015) (citations omitted). To determine whether personal jurisdiction exists, the court must engage in a two-step analysis. *Hunter v. Mendoza*, 197 F. Supp. 2d 964, 967 (N.D. Ohio 2002). First, the court must determine whether Ohio's long-arm statute permits jurisdiction. *Id*. Second, the court must ensure that the exercise of jurisdiction does not violate the Due Process Clause of the United States Constitution. *Id*. The burden is on the plaintiff to make a prima facie showing that the court has personal jurisdiction over each defendant. *Id*. When a court relies solely

on written submission and affidavits to determine personal jurisdiction, the plaintiff's burden is "relatively slight." *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). The Court must view the written materials "in the light most favorable to the plaintiff." *Id.*

### 1. Personal Jurisdiction Under Ohio's Long Arm Statute

Plaintiff alleges that this Court has personal jurisdiction over Defendants under Ohio's long-arm statute. Ohio Rev. Code § 2307.382. This statute provides in relevant part:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
>> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when the person might reasonably have expected that some person would be injured thereby in this state . . . .

*Id.* § 2307.382(A)(6). Plaintiff states that this Court has jurisdiction "because Defendants committed acts outside of the State of Ohio intended to cause and causing injury in the State, including but not limited to the intentional publication of defamatory statements of and concerning an Ohio resident, who's professional activities are centered in the district." (ECF No. 22 at 13). Defendants do not appear to challenge jurisdiction under Ohio law. The Court will, therefore, assume without deciding that the long-arm statute allows the Court to exercise jurisdiction over the Defendants and move to the second step in the analysis.

### 2. Specific Jurisdiction Under the Due Process Clause

"Personal jurisdiction can be either general or specific, depending upon the nature of the contacts that the defendant has with the forum state." *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002) (citations omitted). Plaintiff alleges that it has specific jurisdiction over each of the Defendants.[1] A court can exercise specific jurisdiction over a defendant in a suit that arises or

---

[1] As will be discussed below, Plaintiff also alleges that the Court has general jurisdiction over Defendant Simon.

4

relates to the defendant's contacts with the forum state. To exercise specific jurisdiction over a defendant, the defendant's contacts with the state must satisfy a three-part test:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.* (citing *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 2000)). The "central inquiry is whether minimum contacts are satisfied so as not to offend 'traditional notions of fair play and substantial justice.'" *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) (citations omitted).

Defendants argue that Plaintiff failed to meet the abovementioned three-part test. They assert that none of the Defendants have purposefully availed themselves of acting in Ohio. Plaintiff's basis for jurisdiction appears to be that: (1) Defendant Severns operated an interactive internet site that was specifically aimed at Ohio; and (2) the harm was suffered in Ohio. The Court will consider whether either theory demonstrates that the Court has specific jurisdiction over the Defendants.

First, "[t]he 'operation of an Internet website can constitute the purposeful availment of the privilege of acting in a forum state . . . if the website is interactive to a degree that reveals specifically intended interaction with residents of the state.'" *Cadle Co. v. Schlichtmann*, 123 F. App'x 675, 678 (6th Cir. 2005) (second alteration in original) (citing *Bird*, 289 F.3d at 874). This Circuit uses a sliding scale approach to determine whether a defendant's website constitutes purposeful availment. *Id.* The scale "distinguishes between interactive websites, where the defendant establishes repeated online contacts with residents of the forum state, and websites that

5

are passive, where the defendant merely posts information on the site." *Id.* (citations omitted). "Interactive websites can subject the defendant to specific personal jurisdiction, whereas passive websites are less likely to confer such jurisdiction." *Id.* (citations omitted).

Plaintiff asserts that the website is interactive. (ECF No. 7 at 16). To support this allegation, she states that the website stated that Severns Valley "has a long legacy of passionately sharing the gospel regionally and internationally." (ECF No. 22-2 at 2). This statement, according to Plaintiff, means that Severns Valley "actively seeks regional following by interactively postings its videos on its own websites and posting on Instagram, Youtube, and other websites. (ECF No. 22 at 16). Ohio is within the church's region. Defendants respond that Plaintiff's argument is based on Defendant Severns' postings, but not on any interactive communications or interactions with individuals through their website. The Court agrees. There is no evidence that the website specifically targeted Ohio residents in any way. There is no evidence that Defendants conducted business with Ohio via the website. *See Sanders v. Sennholz*, No. 17-10578, 2017 WL 3215207, at *5 (E.D. Mich. July 28, 2017) (concluding the court could not exercise specific personal jurisdiction where there was "no evidence that the website specifically targeted Michigan residents in any way"). Plaintiff has not even attempted to allege any sort of interactivity in which the user of the website would interact with the Defendant. Even "the middle ground" of website interactivity—websites that fall between interactive and passive websites—"is occupied by interactive Web sites where a user can exchange information with the host computer." *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). Plaintiff has not explained how a user exchanges information with Defendants' website. She has based her argument on mere postings, which is not sufficient. Plaintiff failed to meet her burden. The Court, therefore, concludes that the internet website fails to establish specific personal jurisdiction.

Second, Plaintiff argues that the Court has specific jurisdiction based on the fact that the "Defendants purposefully directed their defamatory statements towards Ohio with the intent to cause harm to [Plaintiff] in Ohio." (ECF No. 22 at 15). Defendants responds that "mere injury to a forum resident is not a sufficient connection to the forum to show purposeful availment." (ECF No. 6 at 6 (citations and quotations omitted)). Although, Defendants are correct, beyond injury in Ohio, Plaintiff also states that the statements were predicated on Defendant Simon's dealings with Plaintiff in Ohio. Essentially, she states that the statements were about an Ohio resident's activities in Ohio and the harm was suffered in Ohio.

Plaintiff's argument rests on the *Calder* effects test. *See Calder v. Jones*, 465 U.S. 783 (1984). In *Calder*, the defendants published an allegedly libelous story about the activities of a California resident whose career was centered in California. *Id.* at 784. The article was drawn from California sources and was published in a national magazine with a large circulation in California. *Id.* at 784, 789. The Supreme Court concluded that jurisdiction was "proper in California based on the 'effects' of their Florida conduct in California." *Id.* at 783. The Court specifically relied on the fact that "California [was] the focal point both of the story and of the harm suffered." *Id.* at 789. Importantly, "*Calder* made clear that mere injury to a forum resident is not a sufficient connection to the forum." *Walden v. Fiore*, 571 U.S. 277, 291 (2014). Injury is only jurisdictionally relevant "insofar as it shows that the defendant has formed a contact with the forum State." *Id.* "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.*

Applying *Calder*, the Sixth Circuit concluded in *Reynolds v. International Amateur Athletic Federation*, that the court did not have personal jurisdiction over the defendants. 23 F.3d 1110, 1120 (6th Cir. 1994). There, defendants—who were based in London, England—allegedly

7

published a defamatory press release. *Id.* at 1112. The press release stated that plaintiff, an Ohio resident and world-class athlete, was suspended from competing in certain track meets after testing positive for steroid use in Monaco. *Id.* The plaintiff brought suit in Ohio after losing Ohio corporate endorsement contracts and appearance fees in Ohio. *Id.* at 1117. The court distinguished the case from *Calder* because the press release concerned Monaco activities, the subject matter was based on a drug sample taken in Monaco, the defendant did not publish or circulate the report in Ohio, Ohio was not the focal point of the press relief, plaintiff's reputation was not centered in Ohio, and defendants did not know about the Ohio contracts. *Id.* at 1120.

      This case falls somewhere between these two cases. Like *Calder*, the allegedly defamatory statements are about an Ohio resident's Ohio activities and the brunt of the harm was felt in Ohio. However, like *Reynolds*, the focal point of Defendants testimony was not about Ohio. In fact, here, the focal point of the video was not even Plaintiff. The video was 45 minutes in length and was of Defendant Simon's testimony as part of Defendant Severns' Celebrate Recovery Program. It appears that the video's focal point was Defendant Simon's alleged recovery. For the first 25 minutes of the testimony, Plaintiff does not allege that Defendant even mentioned her. Then, Plaintiff provides evidence of five statements—again, in a 45-minute video—that referenced his "ex-wife." Plaintiff does not allege that Defendant Simon mentioned Ohio or Plaintiff's name a single time. Additionally, like *Reynolds* the defendant did not publish the video in Ohio. That it may have been viewed in Ohio is not enough. This simply is not the same situation as *Calder* where the Defendants wrote an article that was focused on the plaintiff and her activities in California, utilizing California sources, and was published in California. The Court cannot say that Ohio was the focal point of the video. Concluding that the Defendants have sufficient minimum contacts with Ohio would offend traditional notions of fair play and substantial justice. The Court,

8

therefore, concludes that it does not have personal jurisdiction over Defendants.[2] Moreover, as discussed below, even if there were personal jurisdiction, this is not the proper venue for this case.

### 3. General Jurisdiction

Plaintiff additionally alleges that the Court has general jurisdiction over Defendant Simon.[3] "General jurisdiction is proper only where 'a defendant's contacts with the forum state are of such a continuous and systemic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.'" *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002) (citations omitted).

Defendant Simon argues that there are no allegations that he had had "continuous and systematic contacts with Ohio." (ECF No. 6 at 3). Plaintiff states that the Court has general jurisdiction over Defendant Simon because he was a former resident of Ohio, he has a child who resides in Ohio, and he has children who to travel to Ohio. The Court disagrees. Defendant Simon lives in Kentucky and is an active leader within the Severns Valley church in Kentucky. (ECF No. 7 at 5–6). There is no indication that Defendant Simon continues to travel to or visit Ohio. His children's contacts with Ohio do not transfer to him. Plaintiff fails to provide any case law indicating otherwise. Additionally, simply living in Ohio at one time does not give an Ohio court general jurisdiction over him. *McCoy v. Interclaim Holdings Ltd.*, No. 03-CV-4819 (SLT) (LB), 2005 WL 8156768, at *4 (E.D.N.Y. Feb. 25, 2005), *report and recommendation adopted*, No. 03

---

[2] Plaintiff conclusively states that even if she has not shown that the Court has personal jurisdiction over the Defendants, "at the very least, [Plaintiff] should be permitted to conduct discovery to determine Defendant Severns Valley's contacts with the State of Ohio." (ECF No. 22 at 16). However, Plaintiff failed to explain this argument or provide any support for it. This argument is, therefore, waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (alteration in original) (citations omitted)).

[3] Plaintiff admits that the Court does not have general jurisdiction over any of the other Defendants. (ECF No. 22 at 14).

CV 4819 (SLT)(LB), 2005 WL 8156769 (E.D.N.Y. Oct. 11, 2005) ("There is no personal jurisdiction over someone simply because he formerly resided in the state." (citations omitted)). Defendant simply does not have continuous and systematic contacts with Ohio. Thus, there are no allegations sufficient to demonstrate general personal jurisdiction over Defendant Simon.

### B. Venue

Defendants additionally argue that the Court should dismiss this case because venue is not proper in Ohio. Plaintiff asserts that this Court is the proper venue under 28 U.S.C. § 1391(b)(2). In relevant part, 28 U.S.C. § 1391(b)(2) provides that a "civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." The purpose of the venue statute "is to ensure that the plaintiff does not select a venue that is unfair or inconvenient to the defendant." *United Liberty Life Ins. Co. v. Pinnacle W. Cap. Corp.*, 149 F.R.D. 558, 562 (S.D. Ohio 1993).

Plaintiff suggests that this provision makes this Court the proper venue because "all or a substantial portion of the [events] that gave rise to Plaintiff's claims accrued within the State of Ohio, including Defendants' express targeting of the Plaintiff in the State of Ohio, Defendants' publication and republication of the defamatory falsehoods in the district, and the damage to Plaintiff's reputation suffered in the district." (ECF No. 22 at 19). Defendant states that "Plaintiff is trying to base venue on her subjective viewing of the videos in question, which is an improper basis to establish venue." (ECF No. 25 at 8); (ECF No 24 at 6). The Court agrees.

To support her argument, Plaintiff relies on *J.M. Smucker Co. v. Weston Firm, P.C.*, No. 5:13 CV 0448, 2013 WL 3713457 (N.D. Ohio July 15, 2013). There, the plaintiff brought suit against the defendant for its alleged use of plaintiff's trademarks and for making disparaging claims about plaintiff on a website. *Id.* at *2. Defendant's actions did not take place in Ohio. *Id.*

10

However, the trademarks the defendants used were maintained in Ohio and the defendant—a firm who had previously represented plaintiff—knew plaintiff was headquartered in Ohio where the harm was ultimately felt. *Id*. Unlike this case, the defendant was alleged to have improperly used plaintiff's trademark and the trademark was maintained in Ohio, providing an additional tie to Ohio. Here, the only real tie to Ohio is Plaintiff's harm.

Notably, in this case, all four of the Defendants are Kentucky residents, the statements were said in Kentucky, and the video was uploaded in Kentucky. The Court also notes that, contrary to her contentions, there is no evidence that Defendants expressly targeted Plaintiff in Ohio—Plaintiff did not even appear to be the purpose of Defendant's testimony, the Defendant simply mentioned her a few times throughout a 45-minute long video—and Defendants did not publish the video in Ohio. The Defendants published the video on the internet, which was simply accessible in Ohio. Defendants did not do anything to attract Ohio viewers. The fact that the video was available nationally would not make venue proper in every state. Thus, the only fact upon which Plaintiff can rely to establish venue in Ohio is the fact that she felt the harm in Ohio.

The Court acknowledges that courts in this circuit are split as to whether or not a plaintiff can establish venue in a location based solely on where the harm was felt. *See Bluecross Blueshield of Tenn. v. Dunwoody Labs*, No. 1:20-CV-167, 2021 WL 6275252, at *7 (E.D. Tenn. Mar. 8, 2021) (discussing the split). However, this court is persuaded by the courts that have concluded that effect alone is not enough to establish venue. As one district court in this circuit noted, "Congress explicitly removed a plaintiff's residence as a basis for venue in diversity cases in 1990, making the location of a plaintiff's economic harm, without more, insufficient." *Fischell v. Cordis Corp.*, No. 1:15-CV-184, 2016 WL 8467615, at *2 (W.D. Mich. Feb. 18, 2016) (citations omitted). Additionally, "[t]here is an obvious potential for unbounded venue if the courts were to find venue

11

regardless of where the acts occurred, based solely on the existence of economic harm felt in the district where the plaintiff resides or is headquartered." *Astor Holdings, Inc. v. Roski*, No. 01 CIV. 1905 (GEL), 2002 WL 72936, at *9 (S.D.N.Y. Jan. 17, 2002). This is especially true where the requirement of "[s]ubstantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." *Fischell*, 2016 WL 8467615, at *2 (alteration in original) (citations omitted). Where all the events took place in Kentucky and the only link to Ohio is Plaintiff's harm, the Court concludes that a substantial part of the events did not occur in Ohio. *See Codonics, Inc. v. DatCard Sys.*, Inc., No. 1:08-CV-1885, 2009 WL 1097453, at *3 (N.D. Ohio Apr. 22, 2009) ("In deciding venue in tort actions, courts also look to 'where the harms were felt,' but 'the suffering of economic harm within a district is not sufficient without more . . . .'" (citations omitted)); *Letskus v. KVC Grp., LLC*, No. 3:20-CV-1893 (SVN), 2022 WL 2476565, at *6 (D. Conn. July 6, 2022) ("Accordingly, Plaintiff's assertions that he suffered harm to his personal life and finances in Connecticut do not provide a basis for venue in this district." (citations omitted)). Accordingly, the Court concludes not only that it lacks personal jurisdiction over the Defendants, but also Ohio is not the proper venue for this case.

V. **Conclusion**

For the foregoing reasons, the Court GRANTS Defendants' motions (ECF No. 5, 6, 23, 25) and DISMISSES the case in its entirety.

**IT IS SO ORDERED.**

Dated: August 3, 2022

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE